HOTEL EMPLOYEES AND RESTAURANT EMPLOYEES INTERNATIONAL UNION, AFL-CIO, A FOREIGN LABOR ORGANIZATION, APPELLANT, v. STATE EX REL. NEVADA GAMING CONTROL BOARD AND NEVADA GAMING COMMISSION, ADMINISTRATIVE AGENCIES OF THE STATE OF NEVADA, RESPONDENT.

No. 17168

December 29, 1987                                747 P.2d 878

*Pearson and Patton,* and *George W. Foley, Jr.,* Las Vegas, for Appellant.

*Brian McKay,* Attorney General, Carson City, *Mark Lerner,* Deputy Attorney General, and *Dan Reaser,* Deputy Attorney General, Las Vegas, for Respondent.

## OPINION

*Per Curiam:*

This appeal challenges the validity of the Nevada Gaming Commission's Regulation 19, as applied to an international labor union. The Hotel Employees and Restaurant Employees International Union appeals from denial of injunctive and declaratory relief by the district court.

Regulation 19.040 requires the international union to file personnel information with the Nevada Gaming Commission, and presumably subjects international union personnel to disqualification under NRS 463A.040. Not only is the union required to file detailed information about personnel who have been directly or indirectly involved with Nevada gaming employees, but it must also give information about all its officers and policy makers.[1] Persons listed by the union are required to file detailed information about past labor activities, occupational history, past licensing, criminal record, and any subpoenas to appear before an investigative body. Reg. 19.050. It is mandatory that the president and secretary-treasurer of the international comply with the personal reporting requirement. Reg. 19.060. Other policy makers who have had nothing to do with Nevada gaming employees, as well as clerical and ministerial employees, can be exempted from the personal reporting requirement if the union files a certified list. *Id.* Failure to comply with reporting requirements is grounds for disqualification. Reg. 19.050(3).

---

[1]Regulation 19.040(1) provides:

> Each international labor organization shall provide the following information on its list filed with the board:
>
> . . . .
>
> . . . .
>
> (c) With respect to international labor organization personnel, those individuals who perform or who have performed any of the functions set forth in Regulation 19.020(1) with respect to Nevada gaming casino employees or advised or consulted with a local labor organization

Regulation 19 was promulgated in 1985 to implement NRS 463A which sets forth a process for determining the suitability of persons who perform key functions in the representation of gaming employees. The international union contends Regulation 19 exceeds the authority of the Gaming Commission because NRS 463A was not intended to apply to international unions. We agree.

Under the statutory scheme, "every labor organization which represents gaming casino employees" in the state is required to file a list of persons whose suitability is to be scrutinized. These include (1) persons directly involved in employer-employee relations, i.e., persons who adjust grievances or negotiate or administer wages, hours, working conditions or conditions of employment, (2) persons who solicit or collect money for the organization, and (3) persons in supervisory or policy making positions. NRS 463.030(1). Listed persons are required to file fingerprints and a personal history with the Commission. NRS 463A.030(2). The Commission may disqualify any person from his labor organization functions for crimes of moral turpitude, dishonesty in connection with the filing, questionable integrity, or association with criminal elements. NRS 463A.040. A labor union that allows a disqualified person to continue in his position may be enjoined, fined, or disqualified. NRS 463A.250.

The international union argues that Regulation 19.040 exceeds the scope of NRS 463A because the requirement that "every labor organization which represents gaming casino employees in this state" file is directed only at organizations that "represent" employees in collective bargaining, and not the international unions.[2] The Gaming Commission argues international unions

concerning one or more of such functions with respect to Nevada gaming casino employees or who act or have acted as officers, members of the governing body, or in any other policy making position in the international labor organization within the 12 months immediately prior to filing the list:
(1) Full name, including any known alias or nickname;
(2) Title or other designation in the labor organization;
(3) A brief description of the duties and activities of each individual;
(4) Business address and telephone number of each individual; and
(5) Annual compensation including salary, allowances, and other direct or indirect disbursements (including reimbursed expenses).

[2]Under provisions pertaining to local unions, international union personnel who are involved with Nevada gaming employees are subject to regulation. The local organization is required to provide information about persons from the international who have either performed key functions described in NRS 463A.030, or have advised or consulted with the local union on the performance of such functions. Reg. 19.030. International union personnel listed by the local union are required to make a personal filing. These provisions are not challenged in this appeal.

that are "labor organizations" within the meaning of the statute are subject to the requirement because the word "represents" is only part of a clause limiting the geographical scope of the legislation.[3] Alternatively, the Commission argues "represents" should be given the broad meaning of "spokesman for." *Oxford American Dictionary* (1980).

Words in a statute should be given their plain meaning unless this violates the spirit of the act. McKay v. Board of Supervisors, 102 Nev. 644, 648, 730 P.2d 438, 441 (1986). When a statute is clear on its face a court may not go beyond the language of the statute in determining the legislature's intent. *Id.* However, both parties make plausible arguments about the meaning of "represents." When either of the interpretations proffered by the parties can be reasonably drawn from the language of the statute, the statute is ambiguous and the plain meaning rule has no application. *Id.*, 730 P.2d at 442.

Legislative intent can be determined by looking at the entire act and construing the statute as a whole in light of its purpose. Colello v. Administrator, Real Estate Division, 100 Nev. 344, 347, 683 P.2d 15, 16 (1984). The expressly stated purpose of the statute is a factor to be considered. *Id.* The legislative findings state that a procedure for determining the suitability of "any person who performs certain significant functions in the representation of gaming casino employees" was necessary to insure "that licensed gaming be conducted freely and honestly" and to protect the welfare of employees because "the relationship which exists between a labor organization and the employees whom it *represents in collective bargaining* is such that it may significantly affect the conduct of a gaming operation by an employer." (Emphasis added.) NRS 463A.010. The use of "represents" in conjunction with "collective bargaining" in the stated purpose of the statute indicates the international's interpretation of "represents" is correct.

Pursuant to another rule of statutory construction, an ambiguous statute can be construed "in line with what reason and public policy would indicate the legislature intended." McKay v. Board

---

[3]NRS 463A.020(4) provides:

'Labor organization' means an organization of any kind, or any agency or employee representation committee or plan, which exists for the purpose, in whole or in part, of dealing with employers of gaming casino employees concerning grievances, labor disputes, wages, rates of pay, hours of employment or conditions of work of gaming casino employees.

of Supervisors, *supra,* 102 Nev. at 644, 730 P.2d at 442. While we note the legislature found it necessary to monitor persons capable of asserting influence on Nevada gaming licensees, we cannot agree the scope of NRS 463A authorizes the Gaming Commission to inquire into matters concerning international union personnel who have nothing to do with Nevada gaming employees. We do not think the legislature intended that expense reimbursements made to these persons be a matter of concern to the Commission. See Reg. 19.040(1)(c)(5).

In seeking guidance to legislative intent, we have reviewed the public legislative records on file in the research library of the Legislative Counsel Bureau. *See* Industrial Commission v. Milka, 410 P.2d 181, 183-84 (Colo. 1966); State ex rel. Stry-kowski v. Wilkie, 261 N.W.2d 434, 441 (Wisc. 1978). The subject of the bill's application to international unions arose twice during the committee hearings. LEGISLATIVE COUNSEL BUREAU, LEGISLATIVE HISTORY 75-19: S.B. 614 OF THE 58TH SESSION at 33, 66 (1975). Both times, the Gaming Commission's representative disclaimed any intent to attach the international unions. *Id.* At his suggestion, the committee elimi-nated a specific reference to international unions from the bill draft. *Id.* at 33. When Mr. Ashleman, the union representative, expressed concern about regulations that might license everyone in the international organization who has some control over the organization, Senator Dodge, a sponsor of the bill, assured him,

> He [Mr. Hannifin of the Gaming Control Board] indicated that as far as he's concerned he didn't want to be involved with anybody except those directly on the scene here in Nevada, and I think his analogy was to the corporate licens-ing act where we don't go to the stockholders that are all over the world. We direct our attention to the Nevada corpo-ration and the regulation of that corporate personnel.

*Id.* at 66. No legislative intent to bring international unions within the purview of the statute appears from the record.

All the methods we have looked to for guidance to legislative intent lead us to conclude the legislature did not intend to subject international labor organizations to reporting requirements. We hold that Regulation 19, as applied to international unions, exceeded the authority of the Nevada Gaming Commission. The district court erred in determining the regulation was valid. Accordingly, we hereby reverse the judgment of the district court.