SENATOR JOSEPH M. NEAL, JR., AND THE SENATE COMMITTEE ON HUMAN RESOURCES AND FACILITIES, APPELLANTS, v. JERRY GRIEPENTROG, DIRECTOR OF HUMAN RESOURCES; STEPHEN LEWIS, ADMINISTRATOR, DIVISION OF HEALTH RESOURCES AND COST REVIEW; TERESA P. FRONEK RANKIN, ACTING COMMISSIONER OF INSURANCE; FRANKIE SUE DEL PAPA, ATTORNEY GENERAL OF THE STATE OF NEVADA; AND HUMANA, INC., DBA HUMANA SUNRISE HOSPITAL, RESPONDENTS.

No. 22444

HUMANA, INC., A DELAWARE CORPORATION; GROUP HEALTH INSURANCE, INC., A DELAWARE CORPORATION; AND HUMANA HEALTH INSURANCE COMPANY OF NEVADA, A NEVADA CORPORATION, PETITIONERS, v. THE HONORABLE GERARD J. BONGIOVANNI, JUDGE OF THE EIGHTH JUDICIAL DISTRICT COURT OF THE STATE OF NEVADA, IN AND FOR THE COUNTY OF CLARK, RESPONDENT.

GEORGE MEAD HEMMETER, M.D.,
REAL PARTY IN INTEREST.

No. 22856

August 21, 1992                    837 P.2d 432

*Lorne J. Malkiewich,* Legislative Counsel, Carson City, for Senator Neal and Senate Committee.

*Lionel Sawyer & Collins* and *David N. Frederick,* Las Vegas, for Humana.

*Frankie Sue Del Papa,* Attorney General, *Brooke Nielsen,* Chief Deputy Attorney General, Carson City, for Respondents.

*Morton R. Galane,* Las Vegas; *Edwards, Hunt, Hale & Hansen,* Las Vegas, for Hemmeter.

## OPINION

*Per Curiam:*

### Facts

On December 29, 1989, Christopher Thompson, Chief Accountant of the Division of Health Resources and Cost Review (a division of the Department of Human Resources) requested Samuel Hazen, Assistant Executive Director of Finance for Humana Hospital-Sunrise,[1] to submit details of Humana Hospital-Sunrise's contracts with preferred provider organizations.[2] In particular, Thompson asked Hazen to submit details concerning the contractual allowances given to all preferred provider organizations and other entities paying a discounted rate for hospital services. Thompson stated that the information was requested in accordance with a relevant statutory provision (NRS 449.500) in order to allow the Division of Health Resources and

---

[1]Respondent Humana, Inc. ("Humana") does business as Humana Hospital-Sunrise.

[2]This request was made pursuant to statutory provisions giving the Director of the Department of Human Resources authority to require health care facilities to submit information to the Department and authorizing the Director to study and analyze the cost of health care in Nevada and other states.

Cost Review to analyze the contractual discounts of the six largest hospitals in Nevada. In addition, Thompson stated that "[a]ll of the information submitted with respect to particular agreements will be considered confidential" but that Thompson's summary of the data would become public information pursuant to another statutory provision, NRS 449.510.

In response to Thompson's request, Hazen sent Thompson two letters. The first letter contained a listing of discounts given to various preferred provider organizations by Humana Hospital-Sunrise for the fiscal years 1988, 1989, and the first four months of 1990. The second letter provided the same information as well as discounts given to other organizations.

Thompson, using this information, then prepared a report summarizing the discounting practices of Nevada's six largest hospitals.[3] It is impossible to tell, from Thompson's report, if any of the hospitals give disparate discounts to preferred provider organizations. Thompson's report was subsequently given to the Legislative Committee on Health Care.

In February 1991, the Senate Standing Committee on Human Resources and Facilities ("Senate Committee"), acting through its chairperson, Senator Joseph M. Neal, Jr., sought information concerning the cost of health care rendered by Nevada hospitals. Accordingly, the Senate Committee issued subpoenas duces tecum for the production of various records, including Hazen's two letters. The records were possessed by respondents Jerry Griepentrog, Director of the Department of Human Resources, Stephen Lewis, Administrator of the Division of Health Resources and Cost Review, Teresa P. Froncek Rankin, Acting Commissioner of Insurance, and Frankie Sue Del Papa, Attorney General of Nevada.

Respondents Griepentrog, Lewis, Rankin, and Del Papa then brought an action in the First Judicial District Court. Specifically, they sought a declaration that the subpoenaed records were privileged or confidential and requested that the court enjoin further efforts to compel production of the records.

Subsequently, the parties stipulated to the entry of an order for a permanent injunction. According to the stipulation, the records would be produced for the Senate Committee, and the Senate Committee would keep the records in a safe place and would maintain the records' confidentiality unless the Attorney General gave prior approval for their dissemination or disclosure to the public. In addition, under the agreement, if the Attorney General refused to give approval for the records' dissemination or disclo-

---

[3]Specifically, Thompson's report gives, for each hospital, the gross revenue, net revenue, and contribution to net revenue from all of the preferred provider organizations with which the hospital deals.

sure, the Senate Committee would be required to obtain a district court order to disseminate or disclose the records. The district court approved the stipulation and thereafter entered an order for permanent injunction.

In May 1991, the Senate Committee sought approval to disseminate the two letters written by Hazen; the Attorney General denied this request. The Senate Committee then, pursuant to the terms of the stipulated injunction, filed a motion in the district court for an order permitting the dissemination of the letters. Thereafter, on June 18, 1991, the district court heard the motion and determined that NRS 439B.420(10) precludes public disclosure of the documents. The court denied the Senate Committee's motion and entered an order denying the motion for an order permitting the dissemination of documents.

Subsequently, Hazen's first letter was admitted into evidence during the trial of *Humana, Inc., et al. v. George Mead Hemmeter, M.D.*, an unrelated action in the Eighth Judicial District Court. Humana did not object to the admission of the letter into evidence, and Samuel Hazen was later examined by counsel. More than one month later, Humana moved the Eighth Judicial District Court for an order sealing the letter and portions of the trial transcript relating to the letter. Soon thereafter, in an article dated January 18, 1992, the Las Vegas Review-Journal/Sun reported that Humana had asked the district court to seal the records relating to its contractual discounts. The article also revealed that Humana had given disparate discounts to some of the preferred provider organizations with which it had agreements. *See Humana to request sealing of Hemmeter trial records,* Las Vegas Review-Journal/Sun, Jan. 18, 1992, at 1B.

On January 23, 1992, the Eighth Judicial District Court denied Humana's motion to seal the records. The district court agreed to stay entry of its order denying Humana's motion for three days so that this court could consider the issue. Subsequently, on January 28, 1992, Humana filed a petition for writ of mandamus/ prohibition with this court and included a motion to stay the district court order denying Humana's motion to seal the court records. Thereafter, this court entered an order granting Humana's motion to stay the district court's order pending resolution of Humana's petition. This court then entered an order consolidating Humana's petition for writ of mandamus/ prohibition and the Senate Committee's appeal from the First Judicial District Court.

### The Confidentiality of the Documents

On appeal, the Senate Committee argues that the district court

erred in determining that the disputed documents fall within the ambit of NRS 439B.420(10). We agree. "Words in a statute should be given their plain meaning unless this violates the spirit of the act." Hotel Employees v. State, Gaming Control Bd., 103 Nev. 588, 591, 747 P.2d 878, 879 (1987) (citation omitted). NRS 439B.420(10) does not make contracts between health care insurers and hospitals confidential. It provides that contracts submitted under the provisions of NRS 439B.420 are confidential; however, none of the provisions of NRS 439B.420 involves contracts between health care insurers and hospitals. Instead, these provisions prohibit various agreements and arrangements between hospitals and physicians/practitioners and also prohibit hospitals from offering financial inducements to an "officer, employee or agent of an insurer." Because NRS 439B.420(10) is unambiguous, and its plain meaning does not apply to Humana's preferred provider agreements, the district court erred in relying on it.

The Senate Committee also asserts that the documents at issue are public documents pursuant to NRS 449.450-.530. We agree with this assertion. The relevant statutory provisions in NRS 449.450-.530 are the following:

(A) Under NRS 449.460, the Director of the Department of Human Resources may:

> 2. Hold public hearings, conduct investigations and require the filing of information relating to any matter affecting the costs of services in all [health care] institutions . . . and may subpoena witnesses, financial papers, records and documents in connection therewith.

(B) NRS 449.490 provides, in pertinent part, the following:

> 1. Every [health care] institution . . . shall file with the [D]epartment [of Human Resources] the following financial statements or reports . . . at least annually:
>
> (a) A balance sheet detailing . . . assets, liabilities and net worth . . . . ; and
>
> (b) A statement of income and expenses . . . .
>
> . . . .
> 4. All reports, except privileged medical information, filed under any provisions of NRS 449.450 to 449.530, inclusive, are open to public inspection and must be available for examination at the office of the [D]epartment [of Human Resources] during regular business hours.

(C) NRS 449.500 provides that:

> The [D]irector [of the Department of Human Resources] shall engage in or carry out analyses and studies relating to the cost of health care in Nevada and other states, the status

of any [health care] institution . . . and any other appropriate related matters, and he may publish and disseminate any information relating to the financial aspects of health care as he deems desirable in the public interest. He shall further require the filing of information concerning the total financial needs of each institution and the resources available or expected to become available to meet such needs. . . .

(D) NRS 449.510 provides, in part, that:

1.   The [D]irector [of the Department of Human Resources] shall prepare and file such summaries, compilations or other supplementary reports based on the information filed with him pursuant to NRS 449.450 to 449.530, inclusive, as will advance the purposes of those sections. All such summaries, compilations and reports are open to public inspection, must be made available to requesting agencies and must be prepared within a reasonable time following the end of each institution's fiscal year or more frequently as specified by the director. The summaries, compilations and reports must include information regarding each hospital's average and total contractual allowances to categories of payers who pay on the basis of alternative rates rather than billed charges.

Under NRS 449.490(4), the information contained in Hazen's letters is public. According to the terms of this provision, all records submitted under *any* provision in NRS 449.450-.530 "are open to public inspection." Further, under NRS 239.010:

[a]ll public books and records . . . the contents of which are not otherwise declared by law to be confidential, shall be open at all times during office hours to any person, and the same may be fully copied or an abstract or memorandum prepared therefrom, and any copies, abstracts or memoranda of the records taken therefrom may be utilized to supply the general public with copies, abstracts or memoranda of the records.

Thus, even without the express "public inspection" requirement in NRS 449.490(4), all records submitted to the Department are public unless "otherwise declared by law to be confidential."

None of the provisions in NRS 449.450-.530 declares information submitted to the Department to be confidential; therefore, no provision conflicts with NRS 449.490(4) and no provision overrides NRS 239.010. NRS 449.500 allows the Director to *publish* and *disseminate* information relating to the financial aspects of health care *as deemed desirable in the public interest;* this provi-

sion does *not* give the Director discretion to make certain information unavailable to the public. Further, NRS 449.510 requires, in conformity with NRS 239.010, that all summaries and supplementary reports be available to the public.[4]

Although respondents contend that Hazen's letters are protected as trade secrets under NRS 49.325 and NRS Chapter 600A, we conclude that the information in the letters does not constitute a trade secret because it is not a "formula, pattern, compilation, program device, method, technique or process" (or anything similar) as required under NRS 600A.030.[5] Further, we conclude that, contrary to respondents' assertion, the information contained in Hazen's letter is not the type of information subject to executive privilege.

For the reasons stated above, we reverse the First Judicial Court order denying the Senate Committee's motion for an order permitting the dissemination of the letters. In addition, we deny Humana's petition for writ of mandamus/prohibition.[6]

---

[4]We note that NRS 449.510 was amended in 1991 and now states the following:

> 2. The [D]irector [of the Department of Human Resources] shall not disclose or report the details of contracts entered into by a hospital, or disclose or report information pursuant to this section in a manner that would allow identification of an individual payer or other party to a contract with the hospital, except that the director may disclose to other state agencies the details of contracts between the hospital and a related entity.

Thus, NRS 449.510 now removes certain documents from the public sphere and requires that they remain confidential.

[5]NRS 600A.030(4) defines a trade secret as follows: "information including a formula, pattern, compilation, program device, method, technique or process."

[6]The Senate Committee asserts that the letter admitted into evidence at the Hemmeter trial is now a public document, regardless of its status under the statute. Because we conclude that this letter was always a public document, we do not need to reach this issue.