969 P.2d 938 (1998)
Randy J. LANE, Appellant,
v.
ALLSTATE INSURANCE CO., Thomas Coker, William Monie and Robert Touchette, Respondents.
No. 25670.
Supreme Court of Nevada.
December 8, 1998.
Bowers, Thomas and Associates, Verdi, for Appellant.
Frank H. Roberts, Reno; Steptoe & Johnson and Floyd P. Beinstock, Phoenix, Arizona, for Respondents.

OPINION
MAUPIN, J.:
In August 1992, appellant Randy Lane ("Lane"), a former Allstate Insurance Company employee, filed a complaint against Allstate Insurance Company and Allstate officials Thomas Coker, Robert Touchette, and William Monie (collectively "Allstate"). The complaint alleged causes of action for breach of contract and/or constructive discharge, breach of the implied covenant of good faith and fair dealing, fraud, breach of contract, and intentional infliction of emotional distress. Lane amended his complaint in April *939 1993, alleging essentially the same causes of action.[1]
In May 1993, Allstate filed a motion to dismiss (or in the alternative for summary judgment), a motion for sanctions, and a motion to stay the proceedings pending entry of final judgment and termination of a stay in the federal action. Allstate alleged that Lane illegally tape-recorded over 700 telephone conversations with two of the individual defendants and at least 180 witnesses in violation of NRS 200.620, and that Lane's tape-recording rendered it impermissible for him or any of the tape-recorded witnesses to testify in support of the allegations in Lane's amended complaint.
The district court entered an order interpreting NRS 200.620 to require two-party consent to tape-recording of any wire communication. Pursuant to NRS 179.505, the district court suppressed the tapes, the testimony regarding the personal recollections of the taped conversations of the parties to the conversations, and all evidence obtained from the tapes. The district court also granted Allstate's motion for sanctions and dismissed Lane's complaint with prejudice. Lane appeals from the district court's order.
On appeal, Lane argues that NRS 200.620 does not proscribe the tape-recording of one's own telephone conversations. He argues that the statute prohibits a third party from intercepting a communication between two other people unless one of those persons consents and (1) a court order is obtained in advance, or (2) an emergency situation exists and a court subsequently ratifies the interception.

DISCUSSION
This case raises the issue of the scope of NRS 200.620, which makes recording a telephone conversation a criminal offense unless certain criteria are met. NRS 200.620 provides, in pertinent part:
1. Except as otherwise provided in NRS 179.410 to 179.515 inclusive, 209.419 and 704.195, it is unlawful for any person to intercept or attempt to intercept any wire communication unless:
(a) The interception or attempted interception is made with the prior consent of one of the parties to the communication; and
(b) An emergency situation exists and it is impractical to obtain a court order as required by NRS 179.410 to 179.515, inclusive, before the interception, in which event the interception is subject to the requirements of subsection 3.[2]
....
(3) Any person who has made an interception in an emergency situation as provided in paragraph (b) of subsection 1 shall, within 72 hours of the interception, make a written application to a justice of the supreme court or district judge for ratification of the interception....
(Footnote added.)
Thus, single party interception must be judicially pre-approved or judicially ratified where an emergency exists to make preapproval *940 impractical. NRS 179.430 defines "intercept" as "the aural acquisition of the contents of any wire or oral communication through the use of any electronic, mechanical or other device or of any sending or receiving equipment." The taping of a telephone conversation is clearly the aural acquisition of the contents of a wire communication through the use of a mechanical device or receiving equipment. In Rupley v. State, 93 Nev. 60, 560 P.2d 146 (1977), this court held that a police officer's taping of the contents of a telephone conversation by attaching a suction cup recording device to the receiver of an informant's telephone without court authorization illegally intercepted the conversation. Id. at 61, 560 P.2d at 147. Furthermore, courts interpreting the federal wiretap statute, upon which the Nevada statute is based, have consistently held that the tape-recording of telephone conversations constitutes an intercept. See, e.g., United States v. Turk, 526 F.2d 654, 657 (5th Cir.1976).
The plain language of NRS 200.620 belies Lane's argument that this statute does not prohibit taping one's own telephone conversations. The statute applies to "any person," subject only to the limitations which have no application here. (See note 2.) No exceptions are made for private parties. The legislative intent to prohibit the taping of telephone conversations with the consent of only one party is made clear by comparing the language of NRS 200 .620 with the language of NRS 200.650. In NRS 200.650, the legislature prohibited surreptitious intrusion upon in-person, private conversations by means of any listening device, but specifically added the language "unless authorized to do so by one of the persons engaging in the conversation." If the legislature had wanted to create that limitation in NRS 200.620, it would have done so. It seems apparent that the legislature believed that intrusion upon Nevadans' privacy by nonconsensual recording of telephone conversations was a greater intrusion than the recording of conversations in person.
The legislative intent is even clearer when one compares Nevada and federal statutes. In 1973, the Nevada legislature made substantial amendments to NRS 200.620 through NRS 200.690, in order to bring Nevada law somewhat in conformity with federal wiretap statutes. However, the legislature did not adopt one important provision in the federal wiretap statute, which distinguishes Nevada law from federal law. The federal code provides an exception to the statute prohibiting interception of wire communications in 18 U.S.C. § 2511(2)(d) (1970), which states:
It shall not be unlawful under this chapter for a person not acting under color of law to intercept a wire, oral, or electronic communication where such person is a party to the communication or where one of the parties to the communication has given prior consent to such interception unless the communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State.
(Emphasis added.) It must be presumed that the exclusion of this provision in the Nevada statute was deliberate and was intended to provide a different result from that achieved under the federal wiretap statute.
Finally, the testimony and discussions in the 1985 legislative session resolve any last doubts about the legislative intent. The legislature proposed A.B. 188, an amendment to NRS 179.410, NRS 179.515, and NRS 200.620, in the 1985 session. This amendment would have allowed one-party consent for recording of telephone conversations by law enforcement officers. At the hearings on A.B. 188, the Attorney General, the Washoe County District Attorney, and many other law enforcement officials testified in favor of the bill. See Hearing on A.B. 188 Before the Assembly Judiciary Comm., 63rd Leg. (Nev., March 8, 1985), reprinted in Legislative History of A.B. 188, at 957-75; Hearing on A.B. 188 Before the Senate Judiciary Comm., 63rd Leg. (Nev., May 1, 1985), reprinted in Legislative History of A.B. 188, at 1837-57. The legislators and those testifying repeatedly explained and assumed in their discussions that the present law prohibits all recording of one's own telephone conversations, unless it is with judicial approval or ratification. Id. Those who testified in the bill's favor tried to convince the legislature that allowing one party to record his or her own telephone *941 conversations should be allowed as that was not the same type of invasion of privacy as a wiretap by a third person. Id. However, legislators continued to express concern over potential abuses when judicial oversight is lacking. Id. The legislature did not pass the bill, even though the one-party consent would have been limited to law enforcement officers pursuing investigations. This failure to pass A.B. 188 speaks eloquently of the legislative intent to prohibit the unauthorized interception of wire communications.
Thus, we conclude that the district court correctly held that Lane violated the provisions of NRS 200.620 when he tape-recorded telephone conversations with employees of his former employer.
Our next inquiry concerns the effect of the tape-recording on Lane's action against his former employer. The district court dismissed Lane's complaint stating:
Plaintiff's misconduct has directly affected the discovery process and is an abuse of the litigation process. In an attempt to gather evidence, Plaintiff willfully tape recorded conversations without receiving the consent of any other participant. By engaging in such conduct, Plaintiff violated Nevada law and has forever tainted these proceedings. Continued discovery in the instant action is now a laborious task. In order for the Court to determine which evidence will be suppressed, the identity of each of the parties to the taped conversations and the subject matter of the conversations will have to be identified. These additional requirements constitute an inefficient use of judicial resources and place a significant burden on Defendants and their counsel. Furthermore, since much of the evidence in this case has been tainted by Plaintiff's misconduct, the Court finds it highly unlikely that sufficient evidence exists to sustain Plaintiff's claim. Finally, dismissal of Plaintiff's claim will act as a deterrent to other litigants who frustrate the discovery process by attempting to gather evidence through such questionable and dubious means.[3]
Courts have inherent equitable powers to dismiss actions for abusive litigation practices. Young v. Johnny Ribeiro Building, 106 Nev. 88, 92, 787 P.2d 777, 779 (1990). This court will not reverse a particular sanction imposed absent a showing of abuse of discretion. Id. However, where the drastic sanction of dismissal with prejudice is imposed, a somewhat heightened standard of review will apply. Id. In the present circumstances, Lane's conduct in taping the conversations was intentional and illegal. This is certainly the basis for the district court's decision to strike Lane's complaint. However, based upon our inability to reach agreement on a proper interpretation of NRS 200.620, it would be unfair to conclude that, although Lane's conduct was intentional and, as we have now determined illegal, Lane intended to violate state law. Thus, the judgment of the district court is reversed and remanded with instructions that the claim proceed to trial, but that all of the evidence gathered via the interceptions be excluded and no reference by Lane to any statements made during the interceptions will be allowed.[4]
Justice SHEARING, with whom Justice YOUNG agrees, concurring in part and dissenting in part.
I would affirm the judgment of the district court.
I agree that NRS 200.620 prohibits the recording of telephone conversations without the consent of both parties to the conversation, unless authorized or ratified by the court. The prohibited conduct is punishable as "a category D felony as provided in NRS 193.130." NRS 200.690(a). In addition, the violator is liable to the person whose communication *942 was intercepted without his consent for damages. NRS 200.690(b).
The plurality opinion would excuse Lane's conduct on the basis that Lane did not intend to violate state law, even though he intentionally engaged in the prohibited conduct. Ignorance of the law has never been an excuse for criminal conduct. Whiterock v. State, 112 Nev. 775, 782, 918 P.2d 1309, 1314 (1996).
Courts have inherent equitable powers to dismiss actions for abusive litigation practices. Young v. Johnny Ribeiro Building, 106 Nev. 88, 92, 787 P.2d 777.779 (1990). Therefore, since Lane violated Nevada law hundreds of times in his attempt to secure evidence, the district court was within its discretion in dismissing Lane's complaint.
YOUNG, J., concurs.
SPRINGER, C.J., concurring and dissenting.
I concur in the judgment of the court reversing the trial court because it is clear that Mr. Lane could not have intentionally violated NRS 200.620. Only three members of this court can agree as to what the statute means. We certainly cannot hold Mr. Lane criminally responsible for violating a statute the meaning of which cannot be agreed upon by the members of this court.[1]
I cannot agree with the majority that under Nevada law it is a crime for one party to a two-party telephone conversation to tape-record that conversation. The majority holds that one who tape-records his own telephone conversation with a tape recorder intercepts his own conversation. "Intercept" is the key to criminal liability under NRS 200.620. Unless there is an intercepting there can be no criminal conduct. Consequently, in order to hold that Mr. Lane engaged in criminal conduct, this court was forced to say (improvidently) that tape-recording one's own conversation constitutes an interception. It does not. An "interception" requires a third person. Only a third person can intercept a communication, just as only a third person can intercept an attempted forward pass between a passer and a receiver. Where there are only two persons, there cannot be an interception no matter how hard we try to stretch the law and the facts.[2] It is clear to me that Mr. Lane did not "intercept" anything and that he was not engaging in criminal conduct when he recorded his own telephone conversation.
"Every statute must be interpreted in the light of reason and common understanding to reach the results intended by the legislature." Rathbun v. United States, 355 U.S. 107, 109, 78 S.Ct. 161, 2 L.Ed.2d 134 (1957). There can be no doubt about the "common understanding" of the word "intercept"; and, under this understanding, it is idle to argue that when two people are talking to each other, one could be "intercepting" the conversation of the other. I think that no one would disagree about the general meaning of "intercept"; and it seems odd to me that this court would give the word an entirely different meaning when it is applied to two people engaged in "wire communication," that is to say, a telephone conversation.
The majority holds that tape-recording a telephone conversation falls within the statutory language "intercept any wire communication." When I saw this, I asked myself *943 first, "What about wireless communications?" "Is it a crime to `intercept' (tape-record, I guess) communications by radio?" The statute restricts itself to "wire communications"; so I must suppose that one can tape-record radio and other "wireless," two-party conversations. Why would the legislature call recording a telephone conversation an illegal interception and at the same time not consider the recording of a radioed, two-person conversation as being a criminal "interception"? I wonder, too, why the legislature would concern itself with "tape-recorded" conversations and not manually-recorded conversations. One participant in a two-way telephone call could, I assume, dictate the entire conversation for verbatim transcription by a notarial amanuensis. This would result in an accurate, authenticated "recording" of the entire conversation. Perfectly legal under NRS 200.620? It would seem so. I do not read in the majority opinion an explanation of why the legislature would want to make it a crime to tape-record one's own telephone conversation and ignore the "interception" of other kinds of two-party, "non-wire" communications and non-electronic or manual recordings.
In sum, then, the word "intercept" cannot reasonably be held to mean one thing generally and another thing when people are engaged in telephone conversations. Recording the content of a conversation by one participant in a two-person conversation, whether done electronically or manually, cannot be called an interception no matter how hard we stretch. The NRS 200.620(1) interception language applies only where third persons "intercept ... [the] wire communication" of others. There can be no caviling about the meaning of the word "intercept." The root of the word (capere, to capture or seize) tells us what the word is all about.[3] One cannot "seize" something to which he has the right to possession. As mentioned above, no one would consider it possible for either a football passer or receiver to be a pass interceptor; obviously, it takes a third person to capture or seize the football from its intended, two-person, passer-receiver course. Mr. Lane did not have the capacity, as the participant in a two-way conversation, to intercept anything, any more than the receiver of a forward pass can be said to have "intercepted" the pass.
One wonders, then, how the majority could ever get to the point of calling receiver Lane an interceptor. I search for an explanation. The only possible explanation that I can see might be found in the statutory definition of "intercept" contained in NRS 179.430. The statute defines "intercept" as the "aural acquisition of the contents of any wire or oral communication through the use of an electronic, mechanical or other device or of any sending or receiving equipment." The legislation in question refers to "aural acquisition" by means of "electronic, mechanical or other device or of any sending or receiving equipment." The clear image here is that of using an electronic or mechanical eavesdropping "device" by a third, non-participating party, otherwise the very act of talking on a telephone, an electronic device, would be an "aural acquisition" and would subject the speaker to liability. To say that one "aurally acquires" a conversation is to say that one actively obtains access to the conversation, not that one was merely passively listening to what the other party to a conversation was saying. To say that "aural acquisition" means the active use of devices to intercept the communications of others is a logical and consistent way of reading the statute. I cannot believe that the legislature intended a meaning of the word "intercept" that was entirely inconsistent with the word's dictionary meaning or that would produce the absurd result of making all telephone conversations illegal. In sum, I find nothing in NRS 179.430 that would alter the traditional and accepted meaning of "intercept" or that would make the mere recording, electronically or manually, of a two-person conversation a criminal act.
The majority is mistaken in its interpretation of the word "intercept" and wrong in *944 holding that recording a telephone conversation in which the recorder is a participant is a criminal act. It is not a violation of NRS 200.620 to tape-record a telephone conversation in which one is a participant; therefore, I dissent.
ROSE, J., dissenting.
This case raises several novel issues, primary of which concerns the nature and scope of the consent requirement needed to record telephonic conversations pursuant to NRS 200.620 and 200.650, respectively. Additionally, questions are raised concerning which individuals or entities come within the purview of these statutory provisions.
During its 1957 session, the Nevada legislature amended NRS Chapter 200 by enacting and incorporating into that chapter new provisions which prohibited the interception and disclosure of wire communications. See 1957 Nev. Stat., ch. 242, at 334. Pursuant to this enactment, it became illegal for a person to "intercept or attempt to intercept any wire or radio communication unless such interception or attempted interception [was] authorized by both the sender and receiver." 1957 Nev. Stat., ch. 242, § 3, at 334 (emphasis added). Additionally, "person" was defined as "every natural person, firm, copartnership, association or corporation and [included] public officials and law enforcement officers of the state and of a county or municipality or other political subdivision of the state." 1957 Nev. Stat., ch. 242, § 2(1), at 334. As evidenced by the plain language of this statutory enactment, the Nevada legislature clearly adopted a dual party consent statutory scheme with respect to the interception of wire or radio communications.
During the 1973 session, the Nevada legislature made substantial amendments to NRS 200.620 in order to bring Nevada law into conformity with federal wiretap statutes that provided for single-party consent. See Amendments to S.B. 262, Committee on Judiciary at 221 (March 8, 1973). Significantly, NRS 200.620 was amended to make it unlawful for "any person to intercept or attempt to intercept any wire communication unless ... [s]uch interception or attempted interception is made with the prior consent of one of the parties to the communication ...." 1973 Nev. Stat., ch. 791, § 23, at 1748 (emphasis added). The requirement of dual consent was eliminated. The definition of "person" remained essentially unchanged. Accordingly, as a result of this 1973 amendment, federal law's single-party consent format was adopted in both NRS 200.620 and 200.650.
However, because of concerns about possible law enforcement abuses with the single-party consent statutory format, an additional provision was included in the amended NRS 200.620. Pursuant to this added provision, any person who intercepted a conversation based on the consent of one party was required to make written application to a supreme court justice or district court judge within seventy-two hours of the interception for purposes of ratifying the interception. See 1973 Nev. Stat., ch. 791, § 23, at 1748. Further, ratification could only occur if an emergency situation existed and the interception complied with other statutory provisions which permitted law enforcement personnel to engage in electronic interception with a court order.
In 1985, the Nevada legislature again enacted amendments that affected the scope of NRS 200.620, this time modifying the definition of "person" as used in that statute. Pursuant to the 1985 amendments, the definition of "person" included "public officials and law enforcement officers of the state and of a county or municipality or other political subdivision of the state." 1985 Nev. Stat., ch. 127, § 21, at 512. Significantly, the legislature removed the statutory phrase "every natural person, firm, copartnership, association or corporation" which was previously contained in that definition.
Based on the 1973 amendments to NRS 200.620, I conclude that Nevada did indeed enact the single-party consent rule. However, because of the 1985 modification to the definition of "person," it is very unclear as to whether NRS 200.620 and 200.650 were to apply to all individuals, including law enforcement, whether both sections were to apply to law enforcement only, or as Lane argues, whether NRS 200.620 applies only to law enforcement and NRS 200.650 applies to individuals.
*945 While it is clear that "`[w]here the language of a statute is plain and unambiguous,... there is no room for construction, and the courts are not permitted to search for its meaning beyond the statute itself,'" Charlie Brown Constr. Co. v. Boulder City, 106 Nev. 497, 503, 797 P.2d 946, 949 (1990) (quoting In re Walters' Estate, 60 Nev. 172, 183-84, 104 P.2d 968, 973 (1940)), it is equally true that when more than one interpretation of a statute can reasonably be drawn from its language, it is ambiguous and the plain meaning rule has no application. Hotel Employees v. State, Gaming Control Bd., 103 Nev. 588, 591, 747 P.2d 878, 880 (1987). The divergence of opinions by the district court judge and members of this court about what the relevant statutes mean is a clear indication of an ambiguous set of statutes. Because NRS 200.620 is susceptible to various interpretations, I conclude that it is ambiguous and it is appropriate to turn to the rules of statutory construction for guidance. One primary rule of statutory construction is that penal statutes should be strictly construed in favor of the accused, see Smith v. District Court, 75 Nev. 526, 347 P.2d 526 (1959). Using these statutory construction rules, it leads me to the conclusion that the statutory definition of "person" as contained in NRS 200.620 should be interpreted to apply only to public officials and law enforcement personnel, and not to private citizens such as Lane.
I therefore conclude that Lane did not violate any law in recording telephone conversations to which he was a party. Accordingly, this case should be reversed, and Lane should be permitted to pursue his claim against Allstate in district court.
NOTES
[1] Lane initially filed a complaint in federal district court in January 1992 for age discrimination under the Age Discrimination in Employment Act ("ADEA"), the Employee Retirement Income Security Act ("ERISA"), and for relief under Nevada state law. In May 1992, the federal district court dismissed Lane's state law claims without prejudice, retained Lane's ADEA claim, and denied Allstate's motion to dismiss.

In April 1993, the federal magistrate concluded that under Nevada law, Lane had unlawfully tape-recorded numerous conversations with defendants and witnesses and recommended that the federal district court dismiss the action in its entirety. In September 1993, the federal district court denied both Allstate's motion for sanctions, in the form of a dismissal, and Lane's motion for voluntary dismissal. The federal district court noted that Lane did not make the tapes for a tortious purpose, that he was a party not acting under color of law, and that he consented to the tape recording. Therefore, his tape recording did not violate federal wiretapping laws; his actions fell within the exception provided for by 18 U.S.C. § 2511(2)(d)(1997).
[2] The exceptions in NRS 179.410 to NRS 179.515, NRS 209.419 and NRS 704.195 relate to interception authorized by a judge or justice when requested by the attorney general or district attorneys for investigations by law enforcement agencies, interception of offenders' communications in jails or prisons, and interception by public utilities concerning emergency or service outage.
[3] The district court relied in part on NRS 179.505 in suppressing the taped conversations. This provision only applies to criminal actions under Title 14 of the Nevada Revised Statutes, Procedure in Criminal Cases. This, however, of itself, would not require reversal. See Rosenstein v. Steele, 103 Nev. 571, 575, 747 P.2d 230, 233 (1987).
[4] Lane may not, in any fashion, use or refer to the information gathered via the taped conversations. Further, if it appears he is relying on the tapes to elicit testimony from any witness, the defendants may apply to the district court for protective relief.
[1] Justice Shearing is, of course, correct that ignorance of the law is not an excuse for criminal conduct. The "willfulness of the offending party" is, however, a factor that must be taken into account by a district court in exercising its equitable powers to dismiss an action for abusive litigation practices. Young v. Johnny Ribeiro Building, 106 Nev. 88, 93, 787 P.2d 777, 780 (1990). Although Mr. Lane intentionally tape-recorded the conversations at issue, he did not, as the majority correctly recognizes, intentionallyor "willfully"break the law in doing so. Accordingly, it was not proper for the court to dismiss this case.
[2] Not only is the majority opinion illogical, it is unsupported by authority. The majority inappropriately relies on the case of Rupley v. State, 93 Nev. 60, 560 P.2d 146 (1977). In Rupley, a police officer unlawfully "acquired," that is to say intercepted, "wire communications between Rupley and [a third person] an informant by attaching a suction-cup device to the receiver of the informant's telephone." Id. at 61, 560 P.2d at 147. The police officer was clearly acquiring, seizing, interceptinghowever one wants to put itthe conversation of two other parties, without the knowledge of one of the parties. The case cited by the majority has absolutely nothing to do with the issue now before the court.
[3] The dictionary definition of "intercept" is "1. [t]o take or seize by the way, or before arrival at the destined place; to stop or interrupt the progress or course of .... 2. [t]o stop or prevent (from doing something); to hinder. 3. [t]o interrupt communication or connection with." Webster's New International Dictionary 1293 (2d ed.1948).