Rose, J.,
dissenting:
This case raises several novel issues, primary of which concerns the nature and scope of the consent requirement needed to record telephonic conversations pursuant to NRS 200.620 and 200.650, respectively. Additionally, questions are raised concerning which individuals or entities come within the purview of these statutory provisions.
During its 1957 session, the Nevada legislature amended NRS Chapter 200 by enacting and incorporating into that chapter new provisions which prohibited the interception and disclosure of wire communications. See 1957 Nev. Stat., ch. 242, at 334. Pursuant to this enactment, it became illegal for a person to “intercept or attempt to intercept any wire or radio communication unless such interception or attempted interception [was] authorized by both the sender and receiver.” 1957 Nev. Stat., ch. 242, § 3, at 334 (emphasis added). Additionally, “person” was defined as “every natural person, firm, copartnership, association or corporation and [included] public officials and law enforcement officers of the state and of a county or municipality or other political subdivision of the state.” 1957 Nev. Stat., ch. 242, § 2(1), at 334. As evidenced by the plain language of this statutory enactment, the Nevada legislature clearly adopted a dual party consent statutory scheme with respect to the interception of wire or radio communications.
During the 1973 session, the Nevada legislature made substantial amendments to NRS 200.620 in order to bring Nevada law into conformity with federal wiretap statutes that provided for single-party consent. See Amendments to S.B. 262, Committee on Judiciary at 221 (March 8, 1973). Significantly, NRS 200.620 was amended to make it unlawful for “any person to intercept or attempt to intercept any wire communication unless . . . [s]uch interception or attempted interception is made with the prior consent of one of the parties to the communication . . . .” 1973 Nev. *1186 Stat., ch. 791, § 23, at 1748 (emphasis added). The requirement of dual consent was eliminated. The definition of “person” remained essentially unchanged. Accordingly, as a result of this 1973 amendment, federal law’s single-party consent format was adopted in both NRS 200.620 and 200.650.
However, because of concerns about possible law enforcement abuses with the single-party consent statutory format, an additional provision was included in the amended NRS 200.620. Pursuant to this added provision, any person who intercepted a conversation based on the consent of one party was required to make written application to a supreme court justice or district court judge within seventy-two hours of the interception for purposes of ratifying the interception. See 1973 Nev. Stat., ch. 791, § 23, at 1748. Further, ratification could only occur if an emergency situation existed and the interception complied with other statutory provisions which permitted law enforcement personnel to engage in electronic interception with a court order.
In 1985, the Nevada legislature again enacted amendments that affected the scope of NRS 200.620, this time modifying the definition of “person” as used in that statute. Pursuant to the 1985 amendments, the definition of “person” included “public officials and law enforcement officers of the state and of a county or municipality or other political subdivision of the state.” 1985 Nev. Stat., ch. 127, § 21, at 512. Significantly, the legislature removed the statutory phrase “every natural person, firm, copart-nership, association or corporation” which was previously contained in that definition.
Based on the 1973 amendments to NRS 200.620, I conclude that Nevada did indeed enact the single-party consent rule. However, because of the 1985 modification to the definition of “person,” it is very unclear as to whether NRS 200.620 and 200.650 were to apply to all individuals, including law enforcement, whether both sections were to apply to law enforcement only, or as Lane argues, whether NRS 200.620 applies only to law enforcement and NRS 200.650 applies to individuals.
While it is clear that “ ‘[wjhere the language of a statute is plain and unambiguous, . . . there is no room for construction, and the courts are not permitted to search for its meaning beyond the statute itself,’” Charlie Brown Constr. Co. v. Boulder City, 106 Nev. 497, 503, 797 P.2d 946, 949 (1990) (quoting In re Walter’s Estate, 60 Nev. 172, 183-84, 104 P.2d 968, 973 (1940)), it is equally true that when more than one interpretation of a statute can reasonably be drawn from its language, it is ambiguous and the plain meaning rule has no application. Hotel Employees v. State, Gaming Control Bd., 103 Nev. 588, 591, 747 P.2d 878, 880 (1987). The divergence of opinions by the district *1187 court judge and members of this court about what the relevant statutes mean is a clear indication of an ambiguous set of statutes. Because NRS 200.620 is susceptible to various interpretations, I conclude that it is ambiguous and it is appropriate to turn to the rules of statutory construction for guidance. One primary rule of statutory construction is that penal statutes should be strictly construed in favor of the accused, see Smith v. District Court, 75 Nev. 526, 347 P.2d 526 (1959). Using these statutory construction rules, it leads me to the conclusion that the statutory definition of “person” as contained in NRS 200.620 should be interpreted to apply only to public officials and law enforcement personnel, and not to private citizens such as Lane.
I therefore conclude that Lane did not violate any law in recording telephone conversations to which he was a party. Accordingly, this case should be reversed, and Lane should be permitted to pursue his claim against Allstate in district court.