141 Nev., Advance Opinion 10

# IN THE SUPREME COURT OF THE STATE OF NEVADA

CLARK COUNTY DEPARTMENT OF FAMILY SERVICES; AND CLARK COUNTY DISTRICT ATTORNEY'S OFFICE,
Petitioners,
vs.
THE EIGHTH JUDICIAL DISTRICT COURT OF THE STATE OF NEVADA, IN AND FOR THE COUNTY OF CLARK; AND THE HONORABLE KATHLEEN E. DELANEY, DISTRICT JUDGE,
Respondents,
  and
NIKOS SHARP,
Real Party in Interest.

No. 88457



FILED

MAR 06 2025

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY_____
CHIEF DEPUTY CLERK

Original petition for a writ of mandamus or, alternatively, prohibition challenging a district court order compelling the disclosure of confidential information in a criminal prosecution.

*Petition denied.*

Steven B. Wolfson, District Attorney, and Donella Rowe, Chief Deputy District Attorney, Clark County,
for Petitioners.

Nancy Lemcke, Public Defender, and Kristy S. Holston, Deputy Public Defender, Clark County,
for Real Party in Interest.

BEFORE THE SUPREME COURT, HERNDON, C.J., and BELL and LEE, JJ.

## OPINION

By the Court, HERNDON, C.J.:

The State charged real party in interest Nikos Sharp with several criminal offenses stemming from a child abuse or neglect investigation conducted by petitioner Clark County Department of Family Services (DFS). In preparing his defense, Sharp sought information contained in several other reports to DFS involving the alleged victim, and over DFS's objection, the district court compelled DFS to turn over the information, including the identities of the individuals who reported the abuse or neglect to DFS.

In this original proceeding, we consider whether the district court erred in ordering DFS to disclose the identities of the persons who made the unrelated allegations involving the alleged victim. Whether a district court can order DFS to disclose reporter identities during criminal discovery is an important issue that implicates both constitutional concerns and the compelling public interest in encouraging citizens to report suspected child abuse. We choose to entertain the petition to clarify the circumstances under which district courts may order the release of confidential information contained in DFS reports to a defendant in an unrelated criminal case.

We hold that NRS 432B.290(4) provides a limited privilege for reporter identities when the agency possessing that information determines that disclosure would harm an investigation or harm the life or safety of any person. This interpretation harmonizes the plain language of NRS 432B.290 with the constitutional due process requirements of criminal

(O) 1947A

prosecutions. However, the limited privilege for reporter identities does not apply under the facts of this case, and we conclude that the district court did not err in ordering DFS to disclose the identities. Accordingly, we deny the petition.

## FACTS

In 2023, the alleged victim, E.S., told members of her family that Sharp had sexually abused her several years earlier, when she was 9 years old. The State investigated E.S.'s accusations and charged Sharp with sexual assault of a minor under 14 years of age, lewdness with a child under the age of 14, and child abuse, neglect, or endangerment.

During the criminal proceedings, Sharp sought to discover various DFS records as part of his defense. Specifically, he requested the turnover of three reports made to DFS involving allegations that E.S. was physically abused by her mother and one report that E.S. uploaded her own nude photos and videos online. Although Sharp was not directly involved in any of the reports, he argued that they contained information that was favorable and exculpatory to his defense, as well as evidence that could be used to impeach E.S. After in camera review, the district court released redacted versions of the reports to Sharp. Sharp then requested unredacted versions that included the identities of the individuals who made the reports. The district court granted Sharp's motion. DFS moved for reconsideration, which the district court denied. DFS now seeks relief via this original writ petition.

## DISCUSSION

*Entertaining the writ petition is warranted*

Writ relief is an extraordinary remedy.[1] *Smith v. Eighth Jud. Dist. Ct.*, 107 Nev. 674, 677, 818 P.2d 849, 851 (1991); *Mass Land Acquisition, LLC v. First Jud. Dist. Ct.*, 140 Nev., Adv. Op. 67, 557 P.3d 493, 497 (2024) ("Mandamus and prohibition are extraordinary remedies."). "Petitioners carry the burden of demonstrating that extraordinary relief is warranted." *Pan v. Eighth Jud. Dist. Ct.*, 120 Nev. 222, 228, 88 P.3d 840, 844 (2004). Whether to consider a petition for extraordinary writ relief is "purely discretionary with this court." *Mass Land*, 140 Nev., Adv. Op. 67, 555 P.3d at 497 (quoting *Smith*, 107 Nev. at 677, 818 P.2d at 851). Where there is no plain, speedy, and adequate remedy in the ordinary course of law, writ relief may be available. NRS 34.330; *see also Bradley v. Eighth Jud. Dist. Ct.*, 133 Nev. 754, 755, 405 P.3d 668, 671 (2017) ("Generally, extraordinary relief is not available to challenge discovery orders because the law reserves extraordinary writ relief for situations where there is not a plain, speedy and adequate remedy in the ordinary course of law, and discovery orders can be adequately challenged on appeal from a final judgment." (internal quotation marks omitted)). If a district court exceeds its jurisdiction, "a writ of prohibition may issue to curb the extrajurisdictional act." *Canarelli v. Eighth Jud. Dist. Ct.*, 136 Nev. 247, 250, 464 P.3d 114, 119 (2020) (internal quotation marks omitted). "[E]ven though discovery issues are traditionally subject to the district court's

___

[1]Although DFS seeks an alternative remedy in the form of mandamus, "a writ of prohibition is an appropriate remedy to correct an order that compels disclosure of privileged information." *Las Vegas Dev. Assocs., LLC v. Eighth Jud. Dist. Ct.*, 130 Nev. 334, 338, 325 P.3d 1259, 1262 (2014).



discretion and unreviewable . . . this court will intervene when the district court issues an order requiring disclosure of privileged information." *Id.* (internal quotation marks omitted).

We elect to entertain this petition for several reasons. First, DFS correctly asserts that it has no other remedy at law, as an appeal is not authorized by statute. *See Brown v. MHC Stagecoach, LLC*, 129 Nev. 343, 345, 301 P.3d 850, 851 (2013) (stating that this court "may only consider appeals authorized by statute or court rule"); *see also* NRS 177.015(1)-(2) (setting out when the State, as an aggrieved party in a criminal matter, may appeal). Second, as discussed below, the order at issue is one that requires the disclosure of allegedly confidential information, which invokes a question as to the limits of the district court's jurisdiction. *Compare* NRS 432B.290(2) (requiring that child welfare services keep reporter identities confidential, with limited exceptions), *with Canarelli*, 107 Nev. at 250, 464 P.3d at 118 (entertaining a petition regarding the scope of a district court's authority to compel production of privileged documents during discovery).

Having elected to entertain this petition, we now turn to the merits. Ultimately, although we determine that the identities of reporters are protected by statute, we deny the petition because an exception exists and the district court acted within its jurisdiction to compel DFS to provide the unredacted reports concerning E.S.

*NRS 432B.290(4) gives qualified protection to reporter identities*

The parties dispute the proper interpretation of NRS 432B.290(4) as applied to the identities of reporters. We review issues of statutory interpretation de novo. *Mendoza-Lobos v. State*, 125 Nev. 634, 642, 218 P.3d 501, 506 (2009). "This court will attribute the plain meaning to a statute that is not ambiguous." *Id.*

 

NRS 432B.280 provides that DFS information, including records and reports, is confidential. NRS 432B.290 establishes circumstances where DFS reports that are generally confidential under NRS 432B.280 may be disclosed. Included within that statute is subsection 2(e), which allows disclosure to "a court other than a juvenile court, for in camera inspection only, unless the court determines that public disclosure of the information is necessary for the determination of an issue before it." In disclosing such information under any of these applicable circumstances, however, subsection 4 of NRS 432B.290 addresses certain precautions that DFS must undertake. That provision reads:

> [B]efore releasing any information maintained by [DFS] pursuant to this section, [DFS] shall take whatever precautions it determines are reasonably necessary to protect the identity and safety of any person who reports child abuse or neglect and to protect any other person if [DFS] reasonably believes that disclosure of the information would cause a specific and material harm to an investigation of the alleged abuse or neglect of a child or the life or safety of any person.

NRS 432B.290(4). DFS argues that the statute is ambiguous and the proper interpretation of subsection 4 is that reporter identities are *always* protected but that DFS may disclose the identity of "any other person" if it determines that such disclosure will not harm an investigation or a person. Sharp asserts that DFS may disclose both reporter identities and "any other person" identities if it determines that doing so would not cause harm.

We conclude that NRS 432B.290(4) is unambiguous, and therefore, we apply it according to its plain meaning. *Cf. Mendoza-Lobos*, 125 Nev. at 642, 218 P.3d at 506 ("A statute is ambiguous when its language lends itself to two or more reasonable interpretations." (internal quotation marks omitted)). The condition "if [DFS] reasonably believes that

(O) 1947A

disclosure . . . would cause a specific and material harm to an investigation . . . or the life or safety of any person" follows a series of two items joined by the conjunctive "and": "*to protect the identity and safety of any person who reports child abuse or neglect* and *to protect any other person.*" NRS 432B.290(4) (emphases added). When a list is joined by the conjunctive "and," a modifier applies to each item in the list. *See* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 147 (2012) ("When there is a straightforward, parallel construction that involves all nouns or verbs in a series, a . . . postpositive modifier normally applies to the entire series."); *id.* at 116 (explaining that "*and* combines items while *or* creates alternatives"). If the legislature had intended to limit the "reasonably believes" modifier only to the latter "any other person" item, it could have done so by inserting a comma to create a separate clause and using the disjunctive "or" to separate out "any other person" for modification by "reasonably believes." *See Coast Hotels & Casinos, Inc. v. Nev. State Labor Comm'n*, 117 Nev. 835, 841, 34 P.3d 546, 550 (2001) ("The fact that the two phrases . . . are separated by a comma and the word 'or' indicates that the [second] phrase . . . is in the alternative to, and is not conditioned by, the preceding clause."); *see also* Scalia & Garner, *Reading Law, supra,* at 150 (explaining that where items in a list are separated by commas, and a modifier phrase is not set off from the final item by a comma, the modifier only applies to the final item). Therefore, we conclude that NRS 432B.290(4) is not ambiguous and that the plain language comports with Sharp's interpretation that the statute does not grant an absolute privilege. Rather, NRS 432B.290(4) protects reporter identities if DFS "reasonably believes that disclosure . . . would cause a specific and material harm" to a child abuse investigation or to any person's life or safety.

SUPREME COURT
OF
NEVADA

7



Although we hold today that NRS 432B.290(4) is not ambiguous and operates as a single clause, we note that were we to credit DFS's argument and thus find ambiguity, our decision would be the same. NRS 432B.290 as a whole supports our interpretation, and even if we found the statute ambiguous, we would still adopt this interpretation because it comports well with the legislative intent to permit disclosure of reporter identities in limited circumstances. *See McCord v. State*, 139 Nev., Adv. Op. 59, 540 P.3d 433, 437 (2023) (recognizing that this court "must construe the statutory provision as a whole"). NRS 432B.290 is a lengthy statute, but it operates simply. DFS has a mandate to protect confidential information under its control to receive federal funding. NRS 432B.290(1). But DFS may reveal confidential information to some enumerated groups. NRS 432B.290(2). For example, several subsections authorize DFS to disclose confidential information to other persons or entities. *See* NRS 432B.290(2)(a)-(cc) (authorizing DFS to disclose confidential information to various healthcare, government, law enforcement, or guardianship entities); NRS 432B.290(3) (authorizing DFS to provide certain information to the alleged abuser). In certain provisions, the release of the information is specifically limited by language expressly stating that the name of the reporter must be kept confidential. *See, e.g.*, NRS 432B.290(2)(i) (governing the release of information during guardianship proceedings); *see also* NRS 432B.290(j), (q), (r), (u).

The same is true for subsection 3, given that DFS may disclose certain information to alleged abusers but "must not identify the person responsible for reporting the alleged abuse or neglect or any collateral sources and reporting parties." NRS 432B.290(3)(b). Nowhere else does NRS 432B.290 explicitly prohibit disclosing reporter identities. *See In re*

(O) 1947A

*Christensen*, 122 Nev. 1309, 1323, 149 P.3d 40, 49 (2006) ("One basic tenet of statutory construction dictates that, if the legislature includes a qualification in one statute but omits the qualification in another similar statute, it should be inferred that the omission was intentional."); *see also Ex Parte Arascada*, 44 Nev. 30, 35, 189 P. 619, 620 (1920) ("[W]hen the Legislature enumerates certain instances in which an act or thing may be done, or when certain privileges may be enjoyed, it names all that it contemplates; otherwise what is the necessity of specifying any?"). This indicates the legislature's intent to completely protect reporter identities from disclosure in these specific situations *only*, and where unqualified protection is not specified, as in the operative subsection 4, it should not be implied. Therefore, even if NRS 432B.290 were ambiguous, reading it as a whole supports our interpretation of subsection 4 as providing only a *limited* privilege for reporter identities during discovery.

*Public policy further supports our interpretation of NRS 432B.290(4)*

DFS asserts that releasing the names of reporters could have a chilling effect on reports of child abuse or neglect. As a result, DFS argues that permitting the disclosure of reporter information violates the public policy interest of allowing individuals to report suspected abuse without concern that their name could be released. *See Hotel Emps. & Rest. Emps. Int'l Union v. State ex rel. Nev. Gaming Control Bd.*, 103 Nev. 588, 591, 747 P.2d 878, 880 (1987) (recognizing that statutes "can be construed in line with what reason and public policy would indicate the legislature intended" (internal quotation marks omitted)); *see also Speer v. State*, 116 Nev. 677, 679, 5 P.3d 1063, 1064 (2000) ("[S]tatutory language should be construed to avoid absurd or unreasonable results . . . ."). We disagree, because public policy favors an interpretation that permits disclosure of reporter identities, when necessary, during criminal discovery.

SUPREME COURT
OF
NEVADA



We are bound to interpret statutes "so as to be in harmony with the constitution." *Thomas v. Nev. Yellow Cab Corp.*, 130 Nev. 484, 488, 327 P.3d 518, 521 (2014) (quoting *State v. Glusman*, 98 Nev. 412, 419, 651 P.2d 639, 644 (1982)). Criminal defendants do not have an unlimited constitutional right to discovery, and "the Due Process Clause has little to say regarding the amount of discovery which the parties must be afforded." *Bradley*, 133 Nev. at 759, 405 P.3d at 673 (quoting *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977)).

At the same time, the United States Supreme Court has recognized that keeping reporter identities confidential serves the vital policy goal of encouraging reports of child abuse. *See Pennsylvania v. Ritchie*, 480 U.S. 39, 60 (1987) ("Relatives and neighbors who suspect abuse also will be more willing to come forward if they know that their identities will be protected."); *see also id.* at 60 n.17 (noting that this public policy is so important that all 50 states and the District of Columbia have statutes that protect the confidentiality of official records concerning child abuse). Thus, the policy concerns behind NRS 432B.290 must coexist with Sharp's ability to prepare a defense.

Construing NRS 432B.290(4) to provide a limited privilege for reporter identities balances these policy goals by creating a safety valve: DFS can protect reporter identities *if* it determines that disclosure would harm an investigation or a person. This interpretation also fits neatly with the other provisions of the statute. For example, as noted, NRS 432B.290(2)(e) authorizes DFS to publicly disclose confidential information if "the court determines that public disclosure of the information is necessary for the determination of an issue before it." Interpreting NRS 432B.290(4) otherwise would improperly impact criminal defendants'



ability to defend themselves by forever foreclosing their ability to get discovery that might be essential to their defense.

*The district court correctly ordered the disclosure of the reporters' identities*

Under NRS 432B.290(2)(e), the district court is required to conduct an in camera review to determine what can be released, and the judge appropriately did so in this case. Both the plain text and public policy weigh in favor of interpreting NRS 432B.290(4) to allow disclosure of reporter identities during discovery unless DFS determines that doing so will cause harm to an investigation or to a person. Applying that interpretation, we hold that the district court did not exceed its jurisdiction when it ordered DFS to release the names of the individuals who made the reports at issue. At oral argument, DFS conceded that it had not determined whether disclosure would result in any harm. While DFS would not need to make that determination until a request to disclose the identities was presented, it would certainly be expected to address whether disclosure would result in harm at the point when the issue was being litigated in the district court. Therefore, DFS did not satisfy the precondition that would make the reporters' identities privileged information under NRS 432B.290(4). Further, the district court determined that the reporter identities were necessary evidence for the parties to have at trial.

## CONCLUSION

Having considered the petition and the supporting documentation presented, we hold that NRS 432B.290(4) provides a limited privilege for reporter identities. That privilege applies to keep reporter identities confidential if DFS first determines that disclosure of that information would harm an investigation or harm the life or safety of any person. Because DFS did not make such a determination in this case, we


(O) 1947A

conclude that the reporter identities at issue were not protected from discovery. As a result, the district court did not exceed its jurisdiction by ordering DFS to disclose them. Accordingly, we deny the petition.[2]

_____, C.J.
Herndon

I concur:

_____, J.
Bell

_____

[2]In light of this decision, this court's stay of enforcement of the district court's orders requiring DFS to turn over unredacted records and source information is lifted.

Supreme Court
of
Nevada

(O) 1947A

LEE, J., concurring:

I write separately from the majority because, although I agree with my colleagues' final determination, I disagree with their interpretation of NRS 432B.290(4).

NRS 432B.290(4) provides:

> Except as otherwise provided by subsection 6, before releasing any information maintained by an agency which provides child welfare services pursuant to this section, an agency which provides child welfare services shall take whatever precautions it determines are reasonably necessary to protect the identity and safety of any person who reports child abuse or neglect and to protect any other person if the agency which provides child welfare services reasonably believes that disclosure of the information would cause a specific and material harm to an investigation of the alleged abuse or neglect of a child or the life or safety of any person.

Looking first to the plain meaning of the relevant text, I read the phrase "to protect the identity and safety of any person who reports child abuse and neglect" as independent from the phrase "to protect any *other* person if the agency . . . believes that disclosure of the information would cause . . . harm." (Emphasis added.) *Matter of Petition of Phillip A.C.*, 122 Nev. 1284, 1293, 149 P.3d 51, 57 (2006) ("When interpreting a statute, words should be given their plain meaning unless it would violate the spirit of the act."). If the condition "if the agency . . . believes that disclosure of the information would cause . . . harm" applied to both the reporter and other persons, as the majority concludes, there would be no reason to separately denote the protection of "any person who reports child abuse" and "any *other* person." By singling out persons who report child abuse, the statute creates a distinct class of people who are automatically protected. I

can see no reason for identifying this specific class other than to exclude it from the condition.

Beyond the plain meaning, I posit that the rules of grammatical construction further support applying the condition to only the second distinct class of individuals identified in the statute. The majority concludes that the condition modifies both "to protect the identity and safety of any person who reports child abuse or neglect" and "to protect any other person" by explaining that when a list is joined by the conjunctive "and," a modifier will apply to all items in the list, not simply the last one. *See* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 147 (2012). The majority surmises that if the legislature had intended to modify only the second item on the list, it would have separated these clauses with a comma followed by the disjunctive "or." To reach this conclusion, the majority necessarily posits that the "to protect" phrases here constitute a list of nouns or verbs presented in parallel construction.

Although I accept the convention that a modifier applies to all items in a list when verbs or nouns in a list are joined by an "and," I propose that the phrases here are not nouns or verbs but instead adverbial phrases, subject to different grammatical treatment. An adverbial phrase is a group of words that functions as an adverb normally would, adding additional information about a verb, adjective, or adverb. *See* Lenné Edison Espenschied, *The Grammar and Writing Handbook for Lawyers* 164-65 (2011) (discussing verbal phrases). Here, both phrases that begin with "to protect" are infinitive phrases of the verb "protect" operating as adverbs to give more information about the adjective "necessary." What are the precautions necessary for? They are necessary "to protect . . . ." *See id.* at 164-65. Unlike a list of nouns or verbs that stand on their own, these

adverbial phrases offer more information about a verb—here, the adjective "necessary."

Because I understand these two phrases to be adverbial phrases and not nouns or verbs, I find that they are subject to the nearest-reasonable-referent rule (or "last-antecedent" rule). Scalia & Garner, *supra* at 152. This rule provides that when the clauses listed are pronouns, adverbs, adjectives, adverbial phrases, or adjectival phrases, a modifier only applies to the nearest reasonable referent. *Id.* Put simply, when two or more phrases function as adverbs, the modifier only applies to the closest—here, the last—phrase in the series. Following this grammatical rule, the condition "if [DFS] reasonably believes . . ." modifies only the second adverbial phrase, "to protect any other person." It is my understanding, therefore, that under NRS 432B.290(4), DFS is always required to protect the identity of reporters but is required to protect "any other person" only when revealing information could cause harm to the investigation or the life or safety of any other person. *See Lockhart v. United States*, 577 U.S. 347, 351 (2016) ("When this Court has interpreted statutes that include a list of terms or phrases followed by a limiting clause, we have typically applied an interpretive strategy called the 'rule of the last antecedent.' . . . . [This] provides that 'a limiting clause or phrase . . . should ordinarily be read as modifying only the noun or phrase that it immediately follows.'" (quoting *Barnhart v. Thomas*, 540 U.S. 20, 26 (2003))).

Additionally, while both myself and the majority proffer that the statute is unambiguous and that our review should therefore be cabined to a textual analysis, I recognize the fact that we have interpreted the statute differently suggests that ambiguity may be afoot. Accordingly, looking beyond the text itself, I find that the legislative intent of NRS

Chapter 432B favors an interpretation of subsection 4 that errs on the side of protecting the identity of reporters. *State v. Lucero*, 127 Nev. 92, 95, 249 P.3d 1226, 1228 (2011) ("[W]hen the statutory language lends itself to two or more reasonable interpretations, the statute is ambiguous, and we may look beyond the statute in determining legislative intent." (internal quotation marks omitted)). "Legislative intent can be determined by looking at an entire act and construing the statute as a whole in light of its purpose." *Hotel Emps. & Rest. Emps. Int'l Union v. State ex rel. Nev. Gaming Control Bd.*, 103 Nev. 588, 591, 747 P.2d 878, 880 (1987). NRS Chapter 432B as a whole concerns the protection of children from abuse and neglect and provides specific, limited circumstances where DFS has the discretion to release protected information. NRS 432B.290(2). However, even within these limited circumstances, the statute requires identifying information be kept confidential. *See* NRS 432B.290(2)(g), (i), (j), (q). This explicit protection of identifying information, even within the permissible release of otherwise protected information, shows a legislative intent to keep identifying information confidential. Thus, I find that the legislative intent supports an interpretation of subsection 4 that allows for the automatic protection of reporter identity.

I also find that public policy favors DFS's interpretation of subsection 4, as releasing the name of the reporter could cause a chilling effect on reports of child abuse or neglect. *Hotel Emps.*, 103 Nev. at 591, 747 P.2d at 880 (holding that when a statute is ambiguous, a court may look to "what reason and public policy would indicate the legislature intended"). As the United States Supreme Court has recognized and the majority acknowledges, "[r]elatives and neighbors who suspect abuse also will be more willing to come forward if they know that their identities will be

protected." *Pennsylvania v. Ritchie*, 480 U.S. 39, 60 (1987). Accordingly, "all 50 States and the District of Columbia have statutes that protect the confidentiality of their official records concerning child abuse." *Id.* at 60 n.17. Reading NRS 432B.290(4) to always protect reporter identities and safety furthers such goals in Nevada.

Based on the foregoing, I propose that NRS 432B.290(4) provides that DFS must always protect the identity of reporters but must protect "any other person" only when the disclosure would cause specified harm. However, because I also find that NRS 432B.290(2)(e) (allowing for public disclosure of the information when the court deems it necessary for the determination of an issue before it) offers an exception to subsection 4, I agree with the majority's ultimate conclusion and therefore concur in the result.

_____, J.
Lee

