140 Nev., Advance Opinion 67

# IN THE SUPREME COURT OF THE STATE OF NEVADA

|  |  |
|---|---|
| MASS LAND ACQUISITION, LLC, A NEVADA LIMITED LIABILITY COMPANY,<br>Petitioner,<br>vs.<br>THE FIRST JUDICIAL DISTRICT COURT OF THE STATE OF NEVADA, IN AND FOR THE COUNTY OF STOREY; AND THE HONORABLE JAMES E. WILSON, DISTRICT JUDGE,<br>Respondents,<br>and<br>SIERRA PACIFIC POWER COMPANY, A NEVADA CORPORATION, D/B/A NV ENERGY,<br>Real Party in Interest. | No. 85693<br><br><br>FILED<br>OCT 17 2024<br>ELIZABETH A. BROWN<br>CLERK OF SUPREME COURT<br>BY<br>CHIEF DEPUTY CLERK |

Original petition for a writ of mandamus or prohibition challenging district court orders denying a motion to dismiss and granting a motion for immediate occupancy in an eminent domain action.

*Petition denied.*

Law Offices of Kermitt L. Waters and James J. Leavitt, Kermitt L. Waters, Michael A. Schneider, and Autumn L. Waters, Las Vegas,
for Petitioner.

Leach Kern Gruchow Anderson Song and Kirby C. Gruchow, Jr., and Jeremy B. Duke, Las Vegas,
for Real Party in Interest Sierra Pacific Power Company.

Garrett Weir and Cameron Dyer, Carson City,
for Amicus Curiae Public Utilities Commission of Nevada.

Davison Van Cleve, PC, and Robert D. Sweetin, Las Vegas,
for Amicus Curiae Valley Electrical Association, Inc.

 
24-39155

Eglet Adams Eglet Ham Henriod and Joel D. Henriod, Las Vegas,
for Amicus Curiae Southwest Gas Corporation.

Gregory J. Walch and Steven C. Anderson, Las Vegas,
for Amici Curiae Las Vegas Valley Water District and Southern Nevada
Water Authority.

McDonald Carano LLP and Adam Hosmer-Henner, Reno; Vinson & Elkins
LLP and Jeremy C. Marwell, Washington, D.C.,
for Amici Curiae Edison Electric Institute and American Gas Association.

Paul C. Ray, Chtd., and Paul C. Ray, Las Vegas,
for Amicus Curiae Rainbow Bend Homeowners Association.

---

BEFORE THE SUPREME COURT, EN BANC.

*OPINION*

By the Court, PICKERING, J.:

Eminent domain is the power of the government to take private property for public use without the landowner's consent, provided just compensation is paid. In *Kelo v. City of New London, Connecticut*, 545 U.S. 469, 484 (2005), a divided Supreme Court upheld, as a matter of federal constitutional law, a local government's taking of private property so that it could then transfer the property to another private party as part of an economic redevelopment plan. The *Kelo* decision ignited a national controversy over the use of eminent domain to benefit private interests, with many states enacting laws to limit what qualifies as a "public use" for state eminent domain purposes. In Nevada, voters amended the Nevada Constitution, effective 2008, to provide: "Public use shall not include the direct or indirect transfer of any interest in property taken in an eminent

domain proceeding from one private party to another private party." Nev. Const. art. 1, § 22(1). The amendment also added procedural protections for landowners, including the right to have a jury determine "whether the taking is actually for a public use" before occupancy is granted. *Id.* art. 1, § 22(2).

This matter arises from an eminent domain action that real party in interest Sierra Pacific Power Company, dba NV Energy, initiated against petitioner Mass Land Acquisition to take an easement across Mass Land's property for a natural gas pipeline. NV Energy sought immediate occupancy. Mass Land moved to dismiss the action, arguing that it would violate article 1, section 22(1) of the Nevada Constitution for NV Energy, a for-profit, private company, to use its statutorily delegated eminent domain power to take and thereby transfer another private party's property to itself. In the alternative, Mass Land asked for a jury to decide whether the taking was actually for a public use. The district court denied the motion to dismiss and granted NV Energy immediate occupancy. Mass Land petitions this court for a writ of mandamus or prohibition against the district court's rulings.

We deny Mass Land's petition for extraordinary writ relief. Nevada statutes delegate the government's eminent domain power to regulated public utilities for certain specified public uses, including "[p]ipelines for the transportation of . . . natural gas." NRS 37.010(1)(k); *see* NRS 37.0095(2). By its terms, article 1, section 22(1) prohibits taking private property for purposes of transferring the property to another private party for their use, protecting Nevadans from takings like the one that occurred in *Kelo*. This section does not prohibit a regulated public utility that "has the power of eminent domain," Nev. Const. art. 1, § 22(8); *see* NRS

37.0095(2), from taking property for a natural gas pipeline, a statutorily recognized public use, see NRS 37.010(1)(k). Indeed, for purposes of takings law, the Nevada Constitution defines a "private entity that has the power of eminent domain" as "the government." Nev. Const. art. 1, § 22(8).

Nor was it error for the district court to resolve Mass Land's public use challenge as a matter of law. While article 1, section 22(2) entitles the landowner to a pre-occupancy jury determination on "whether the taking is actually for a public use," that right is subject to ordinary civil process. A civil case does not go to a jury unless there are issues of fact for the jury to decide, and the record in this case does not support that any such factual issues exist as to whether the taking was actually for a public use.

I.

NV Energy is an investor-owned public utility that provides electricity and natural gas to Nevada consumers. This dispute centers on its South Reno Second Source Gas Pipeline project (the Project). The Project called for NV Energy to construct and operate an underground natural gas distribution pipeline across parts of Storey and Washoe Counties in northern Nevada. The Project's goal was to improve reliability by lessening reliance on South Reno's main feeder line, to extend service so propane consumers in Lockwood could convert to natural gas, and to enhance public safety by reducing pressure in the area's natural gas distribution lines.

To build the pipeline, NV Energy needed to acquire construction and right-of-way easements. The pipeline's 16-mile path ran along an existing utility corridor located on private property, including property belonging to Mass Land. The easement area on Mass Land's property was already encumbered with overhead electrical transmission lines and an effluent water line and had an appraised value of $10,700. NV Energy negotiated acquisition agreements with the 25 other private

property owners on the pipeline's path but could not reach agreement with Mass Land.

When their negotiations failed, NV Energy sued Mass Land in eminent domain. NV Energy coupled its complaint with a motion for immediate occupancy so it could complete the construction already underway on the pipeline. *See* NRS 37.100(2). In response, Mass Land filed a motion to dismiss in which it argued that, as a private entity, NV Energy could not as a matter of law establish the "public use" required to condemn an easement across Mass Land's property. *See* Nev. Const. art. 1, §.22(1). Mass Land separately opposed the motion for immediate occupancy and asked for a jury to determine whether the taking was actually for a public use before occupancy was allowed.

The district court denied Mass Land's motion to dismiss and granted NV Energy's motion for immediate occupancy. It concluded that, as a regulated public utility, NV Energy was exercising delegated eminent domain powers and acting as the government, not as a private party, in condemning an easement for its natural gas pipeline. *See* Nev. Const. art. 1, § 22(8); NRS 37.0095(2); NRS 37.010(1)(k). This took the transaction outside the constitutional prohibition against finding public use when private property is taken by eminent domain, then transferred to another private party. *See* Nev. Const. art. 1, § 22(1). And, since the record established that the taking was for a natural gas pipeline, which NRS 37.010(1)(k) defines as a public use, the district court rejected Mass Land's argument that a jury needed to determine public use before occupancy could occur. The district court conditioned its occupancy order on NV Energy depositing $10,700 with the court, representing the appraised value of the easement area, which NV Energy did within days of the order being filed.

Mass Land petitioned this court for extraordinary writ relief. It concurrently filed a motion in district court, asking that court to stay occupancy and any further proceedings pending writ review, which the district court denied. Mass Land then moved this court to stay the occupancy order and further district court proceedings, but it withdrew the motion several days later, before it had been resolved. Next, the parties stipulated to vacate oral argument so they could explore settlement. When the parties reported that they had not reached settlement, the matter was reset for argument. Meanwhile, with no stay in place, NV Energy took occupancy of Mass Land's property and completed the pipeline. At oral argument, the parties represented that the pipeline is fully operational and providing service in northern Nevada.

## II.

Mandamus and prohibition are extraordinary remedies. Traditional mandamus is available to compel the performance of an act the law requires or to control an arbitrary or capricious abuse of discretion. *Archon Corp. v. Eighth Jud. Dist. Ct.*, 133 Nev. 816, 819-20, 407 P.3d 702, 706 (2017). Prohibition may issue to halt proceedings the district court lacks jurisdiction to conduct. *Id.* For either form of traditional writ to issue, the case must be one "where there is not a plain, speedy and adequate remedy in the ordinary course of law." NRS 34.170; NRS 34.330. However, on rare occasions, this court has also issued advisory mandamus "when an important issue of law needs clarification and considerations of sound judicial economy and administration militate in favor of granting the petition." *Archon*, 133 Nev. at 820, 407 P.3d at 706 (quoting *Int'l Game Tech., Inc. v. Second Jud. Dist. Ct.*, 124 Nev. 193, 197-98, 179 P.3d 556, 559 (2008)); *see id.* at 823, 407 P.3d at 708 (limiting advisory mandamus to issues affecting not only the immediate parties but that are of statewide

concern, whose resolution will also "assist other jurists, parties, or lawyers") (quoting *In re Bushkin Assocs., Inc.*, 864 F.2d 241, 247 (1st Cir. 1989)). Whether to consider a petition for extraordinary writ relief is "purely discretionary with this court." *Smith v. Eighth Jud. Dist. Ct.*, 107 Nev. 674, 677, 818 P.2d 849, 851 (1991).

Mass Land seeks both traditional writ relief and advisory mandamus. It bases its claim to advisory mandamus on its constitutional challenge to NV Energy's ability to establish the "public use" required for it to exercise the power of eminent domain, an issue it asserts is of statewide public importance. Citing *City of Las Vegas Downtown Redevelopment Agency v. Pappas*, 119 Nev. 429, 76 P.3d 1 (2003), Mass Land maintains that it qualifies for traditional mandamus as well, since the district court's occupancy order is clearly erroneous and inflicts harm that an appeal after final judgment cannot adequately remedy.

In *Pappas*, this court considered an appeal from an order dismissing an eminent domain action because the condemnor did not establish public use. The landowners did not bring their motion challenging public use until three years into the litigation. *Id.* at 439, 76 P.3d at 8. By then, the condemnor's motion for immediate occupancy had long since been granted and a parking garage built on the landowners' property. *Id.* On appeal, the condemnor argued that the landowners waived their ability to challenge public use because they neither opposed the motion for immediate occupancy in district court on that basis nor sought extraordinary writ relief from this court after the district court denied their motion to reconsider its occupancy order. Though this court did not find a waiver, it cautioned that, in future cases, challenges to public use "must be raised prior to occupancy and material demolition, alteration or construction on the subject property"

and that "[f]ailure to timely assert lack of public use or necessity will constitute a waiver of these issues." *Id.* at 441, 76 P.3d at 9. This court further noted that "[t]he appropriate vehicle for challenging an order granting a motion for immediate occupancy is a petition for writ relief, as an appeal of this interlocutory order is unavailable under NRAP 3A(b)." *Id.* at 438 n.11, 76 P.3d at 8 n.11.

NV Energy acknowledges that Mass Land raised its "public use" challenge in district court both by motion to dismiss and in opposing occupancy, as *Pappas* directs. NV Energy nonetheless argues that, because it has taken occupancy and built the pipeline, this court cannot grant Mass Land effective relief, so the petition is moot. Mass Land's withdrawal of its motion asking this court to stay the district court's occupancy order is problematic, because it allowed NV Energy to take possession and complete construction in advance of appellate review, which *Pappas* suggests could amount to a waiver of Mass Land's public use challenge.[1] But NV Energy does not argue waiver, and we cannot agree that the petition is moot. Mass Land's primary challenge is that the taking is unconstitutional, because NV Energy, as a private entity, cannot establish "public use." This presents an unsettled question of statewide importance that qualifies for advisory mandamus. *See Sauvageau v. Bailey*, 973 N.W.2d 207, 210 (N.D. 2022). And the matter is not moot. As Mass Land notes, ejectment has been ordered in comparable cases, *see Rhode Island Econ. Dev. Corp. v. The Parking Co.*, 892 A.2d 87, 108 (R.I. 2006); *Heuer v. City of Cape Girardeau,*

---

[1]We reject Mass Land's request that we grant writ relief from the district court's order denying its motion for a stay. Mass Land's remedy was to seek a stay from this court under NRAP 8, which it waived when it withdrew its motion for a stay from this court before it could be decided.

370 S.W.3d 903, 915-16 (Mo. Ct. App. 2012), with restoration and reversion another possibility, *cf.* Nev. Const. art. 1, § 22(6). Because Mass Land is not without a potential remedy for the unconstitutional taking it alleges has occurred, the dispute remains live. We therefore reject NV Energy's mootness challenge and address Mass Land's writ petition on the merits.

## III.

### A.

Eminent domain is the taking of private property for public use, provided just compensation is paid. *See* U.S. Const. amend. V ("nor shall private property be taken for public use, without just compensation"); Nev. Const. art. 1, § 8(3) ("Private property shall not be taken for public use, without just compensation having been first made, or secured."). Article 1, section 22(1) of the Nevada Constitution limits what qualifies as "public use" for eminent domain purposes. It provides:

> Public use shall not include the direct or indirect transfer of any interest in property taken in an eminent domain proceeding from one private party to another private party. In all eminent domain actions, the government shall have the burden to prove public use.

Mass Land's principal argument is that this provision prohibits NV Energy from taking an easement across its land. By its reading, when NV Energy, a private entity, takes private property by eminent domain, it thereby transfers the property to itself, violating the private-to-private transfer prohibition in article 1, section 22(1). NV Energy disagrees. It reads article 1, section 22(1) to prohibit the government—or a private entity to whom the power of eminent domain has been delegated—from taking private property and then transferring that property to another private party.

Supreme Court
of
Nevada

(O) 1947A

"To determine a constitutional provision's meaning, we turn first to the provision's language." *Miller v. Burk*, 124 Nev. 579, 590, 188 P.3d 1112, 1119-20 (2008). If the language is "clear on its face," we do not go beyond that language to determine meaning. *Id.* at 590, 188 P.3d at 1120. But "if a constitutional provision's language is ambiguous," we may look to "the provision's history, public policy, and reason to determine" what the voters likely understood the provision to mean when they adopted it. *Strickland v. Waymire*, 126 Nev. 230, 234-35, 235 P.3d 605, 608-09 (2010) (internal quotation omitted).

The plain text of article 1, section 22(1) supports NV Energy's reading, not Mass Land's. By its terms, the section excludes from the definition of "public use" the *transfer* to a private party of property *taken* in eminent domain; it does not prohibit the *taking* of private property by a private entity to whom the Legislature has delegated the power of eminent domain for a statutorily declared public use. While "transfer" and "taking" both refer to a change in ownership of property, these words have distinct meanings that suggest a material variation in the use of different yet similar terms. *See* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 170 (2012) ("[W]here the document has used one term in one place, and a materially different term in another, the presumption is that the different term denotes a different idea."). *Black's Law Dictionary* defines "transfer" as "[t]o convey or remove from one place or one person to another; to pass or hand over from one to another, esp. to change over the possession or control." *Transfer, Black's Law Dictionary* (11th ed. 2019). A "taking," by contrast, means "[t]o acquire (property) for public use by eminent domain . . . to seize or condemn property." *Take, Black's Law Dictionary* (11th ed. 2019).

Article 1, section 22(1)'s private-party transfer prohibition does not prohibit a private party to whom the power of eminent domain has been delegated from taking private property for public use. The use of the past-tense word "taken" in the same sentence as "transfer" contemplates that the exclusion refers to property that has already been taken through eminent domain and that is then subsequently transferred, directly or indirectly, to a private party. Although NV Energy's taking an easement across Mass Land's property results in the conveyance of a property interest from one private party (Mass Land) to another (NV Energy), the private-transfer exclusion is not triggered because the exclusion only applies to transfers that occur after the property has been taken by eminent domain. The exclusion in article 1, section 22(1) would be implicated if NV Energy took the property, then transferred it to another private party for their private use.[2] But here, no subsequent transfer to a private party followed the taking, and NV Energy took the property for a natural gas pipeline, a statutorily recognized public use.

To read article 1, section 22(1) as Mass Land does would eliminate the government's authority to delegate eminent domain power to private entities, such as common carriers and public utilities, when needed for public use, such as the pipeline in this case. This would create a direct conflict between article 1, section 22(1) and article 1, section 22(8). The latter provision recognizes that a private entity may exercise delegated

---

[2]We express no opinion on NRS 37.010(2), which purports to authorize certain post-taking transfers to private parties of property taken by eminent domain. This case does not implicate that statute since it does not involve a post-taking transfer.

powers of eminent domain to acquire property for public use and that, when that occurs, the private entity acts as the government:

> For all provisions contained in this section, *government shall be defined as* the State of Nevada, its political subdivisions, agencies, any public or private agent acting on their behalf, and *any* public or *private entity that has the power of eminent domain.*

Nev. Const. art. 1, § 22(8) (emphases added). There would be no reason for section 22(8) to include a "private entity that has the power of eminent domain" in its definition of "government" if, as Mass Land maintains, section 22(1) categorically precludes a private entity from establishing the public use required to take private property by eminent domain. "In expounding a constitutional provision such construction should be employed as will prevent any clause, sentence or word from being superfluous, void or insignificant." *Youngs v. Hall*, 9 Nev. 212, 222 (1874).

Both subsections (1) and (8) of article 1, section 22 were enacted at the same time, as part of the People's Initiative to Stop the Taking of Our Land, or "PISTOL." Contemporaneous amendments to constitutional text are construed in pari materia, as one text, *Patton v. United States*, 281 U.S. 276, 298 (1930), *overruled on other grounds by Williams v. Florida*, 399 U.S. 78, 92 (1970), "so as to give effect to and harmonize each provision," *Nevadans for Nev. v. Beers*, 122 Nev. 930, 944, 142 P.3d 339, 348 (2006). Reading article 1, section 22(1) to distinguish between the *taking* of private property by eminent domain and its subsequent *transfer* to another private party harmonizes it with article 1, section 22(8), which recognizes the long-standing rule that the power of eminent domain "can be exercised either by public officials or by private parties to whom the power has been delegated." *PennEast Pipeline Co. v. New Jersey*, 594 U.S. 482, 487 (2021).

SUPREME COURT
OF
NEVADA

(O) 1947A

12

NRS 37.0095(2) preexisted the PISTOL initiative, *see* 1997 Nev. Stat., ch. 330, § 1, at 1224-25, and is consistent with article 1, sections 22(1) and 22(8). This statute provides that "the power of eminent domain may be exercised by a person who is not a public agency pursuant to . . . paragraphs (g) [and] (k) . . . of subsection 1 of NRS 37.010," which in turn provide that "the right of eminent domain may be exercised in behalf of the following public uses: . . . (g) [p]ublic utilities [and] (k) . . . [p]ipelines for the transportation of . . . natural gas, whether interstate or intrastate." Although it is a private entity, NV Energy is also a highly regulated public utility, providing heat, light, and power for use by the public. NRS 704.020(2); *see* NRS 704.040(1) (tasking public utilities with delivering "reasonably adequate service and facilities" at "just and reasonable" rates). Under NRS 37.0095(2) and NRS 37.010(1)(k), NV Energy "has the power of eminent domain" and so is defined as the "government" by article 1, section 22(8) in condemning an easement across Mass Land's property for an intrastate natural gas distribution pipeline.

Although Mass Land argues otherwise, our reading of article 1, section 22(1) aligns with its history. Voters added this provision to the Nevada Constitution as part of the PISTOL initiative, which they passed in response to the controversial *Kelo* and *Pappas* decisions.[3] In *Kelo*, the Supreme Court found "public use" when the government condemned private property for purposes of transferring it to a private developer as part of an

---

[3]*See* Nev. Statewide Ballot Question No. 2, Argument Advocating Passage, pp. 9-10 (2006), https://www.leg.state.nv.us/Division/Research/VoteNV/BallotQuestions/2006.pdf (last visited Sept. 23, 2024); Nev. Statewide Ballot Question No. 2, Argument Advocating Passage, pp. 5-6 (2008), https://www.leg.state.nv.us/Division/Research/VoteNV/BallotQuestions/2008.pdf (last visited Sept. 23, 2024).

Supreme Court
of
Nevada

(O) 1947A

economic redevelopment plan. 545 U.S. at 484. In *Pappas*, this court similarly found the "public use" requirement satisfied where the government condemned private property so it could then transfer the property to another private party in the name of economic redevelopment. 119 Nev. at 434-35, 443, 76 P.3d at 5, 11. Article 1, section 22(1)'s text fits this history—it excludes from the definition of "public use" the taking of private property by eminent domain for purposes of transferring that property to another private party to develop. But neither the text nor the history of the PISTOL initiative identifies an intention to prohibit the delegation of eminent domain power to an investor-owned public utility to take and put property to a statutorily defined public use, such as the natural gas distribution pipeline in this case. *See* note 3, *supra*. On the contrary, as discussed above, article 1, section 22(8), which was enacted as part of the PISTOL initiative, expressly recognizes such delegation and exercise of eminent domain power as preexisting and legitimate.

In *Kelo*, the Supreme Court emphasized "that nothing in our opinion precludes any State from placing further restrictions on its exercise of the takings power." 545 U.S. at 489. More than 40 states, including Nevada, accepted this invitation and passed laws seeking to reform takings law and limit the scope of public use to exclude takings of private property for purposes of transferring that property to another private party. *See* James W. Coleman & Alexandra B. Klass, *Energy and Eminent Domain*, 104 Minn. L. Rev. 659, 661 (2019). The responses varied from state to state. *See* 2A Julius L. Sackman, *Nichols on Eminent Domain* § 7:10 (3d ed. 2024) (cataloging the different reforms states enacted following *Kelo*). Of note, not a single state responded to *Kelo* by prohibiting investor-owned public utilities from exercising delegated eminent domain powers to take private

property for public energy infrastructure purposes. *See* Coleman & Klass, 104 Minn. L. Rev. at 670.

In sum, article 1, section 22(1) excludes from the definition of public use the taking of private property for purposes of transferring that property directly or indirectly to another private party for development. This exclusion does not preclude an investor-owned public utility from exercising its delegated power of eminent domain to take an easement across property for an intrastate natural gas distribution pipeline.

### B.

The district court granted NV Energy's motion for immediate occupancy without convening a jury to decide "whether the taking is actually for a public use." Mass Land contends that this violated article 1, section 22(2) of the Nevada Constitution, which provides:

> *In all eminent domain actions, prior to the government's occupancy, a property owner* shall be given copies of all appraisals by the government and *shall be entitled, at the property owner's election, to a separate and distinct determination by a district court jury, as to whether the taking is actually for a public use.*

(emphases added). Although NV Energy and its amici argue otherwise, this provision gives a property owner the right, on demand, to have a jury determine questions of fact as to whether the proposed taking was "actually" for a public use. *See Strickland*, 126 Nev. at 236, 235 P.3d at 610 (interpreting "actually" as used in another provision of the Nevada Constitution to mean "as an actual or existing fact; really") (internal quotation omitted). The power to decide questions of law, however, remains with the court, which may also decide questions of fact when no jury demand is made. *See* NRS 37.100(3) ("At the occupancy hearing, the court shall make a separate and distinct determination as to whether the property is

 

being taken for a public use, pursuant to NRS 37.010, if the defendant requests such a determination.").

In our legal system, juries function as finders of fact. This means that the jury's role is to examine conflicting evidence and decide wherein the truth lies. An issue of fact that a jury could decide in the occupancy context would be whether a claimed public use is a pretext or sham, such that the taking is not "actually" for a public use. *See Kelo*, 545 U.S. at 478 ("Nor would the City be allowed to take property under the mere pretext of a public use, when its actual purpose was to bestow a private benefit."). In contrast, judges, not juries, decide questions of law and instruct jurors on what law to apply. *See* Nev. Const. art. 6, § 12 ("Judges shall not charge juries in respect to matters of fact, but may state the testimony and declare the law."). It thus was for the court, not a jury, to decide the central legal question Mass Land raised as to whether article 1, section 22 allows a privately owned public utility to take an easement across private land for a natural gas pipeline.

The hypothetical existence of a question of fact in a civil case does not permit a court to call citizens to the courthouse and impanel a jury. For the jury trial right to arise, there must be genuine issues of material fact for the jury to decide. *See Zamora v. Price*, 125 Nev. 388, 392, 213 P.3d 490, 493 (2009) (stating that in a civil case the constitution "guarantees the right to have factual issues determined by a jury") (citing Nev. Const. art. 1, § 3); *Adams v. Smith*, 19 Nev. 259, 271, 9 P. 337, 341 (1886) (noting that in civil cases juries decide "material disputed questions of fact" but not questions of law or uncontroverted facts) (construing Nev. Const. art. 6, § 12); *cf.* NRCP 56 (providing that summary judgment may be entered where there are no genuine issues of material fact for a jury to decide).

The record in this case does not support that there are genuine issues of material fact "as to whether the taking is actually for a public use." In exercising its delegated eminent domain power, NV Energy acted as the government, Nev. Const. art. 1, § 22(8), so it had "the burden to prove public use." *Id*. art. 1, § 22(1). NV Energy verified its complaint and supported its motion for immediate occupancy pursuant to NRS 37.100 with affidavits and evidence about the purpose of and need for the Project. These materials included excerpts from the proceeding NV Energy initially filed with the Nevada Public Utilities Commission (PUC) under the Utility Environmental Protection Act (UEPA) for permission to construct the pipeline, *see* NRS 704.820-.900, which the PUC provisionally approved subject to certain specialized permitting requirements. Together, these submissions sufficiently established public use under NRS 37.0095(2) and NRS 37.010(1)(k) for the court to decide the issue in NV Energy's favor as a matter of law, absent contrary evidence from Mass Land.

In its petition for extraordinary writ relief, Mass Land identifies two issues it contends present "substantial factual questions" as to whether the taking was "actually for a public use," entitling it to a jury under article 1, section 22(2). First, it points to the fact that NV Energy proceeded with construction of the pipeline despite not obtaining the specialized permits on which the PUC conditioned its preliminary approval under the UEPA. But the UEPA requirements only apply to "gas *transmission* lines," not to gas *distribution* lines. NRS 704.860(3) (emphasis added) (defining "utility facility" to include "gas transmission lines"); *see* NRS 704.865 (limiting UEPA's approval requirement to construction of a "utility facility"). While NV Energy initially applied to the PUC for a UEPA permit as a precautionary measure, it withdrew the application once it

determined that the Project's natural gas distribution line did not require UEPA permitting. The record contains no evidence that the portion of the pipeline that crosses Mass Land's property is not, in fact, a gas distribution line and thus outside UEPA's permitting requirements as a matter of law. The lack of a UEPA permit thus does not raise a genuine issue of material fact as to the Project being "actually for a public use."

Second, Mass Land asserts that the affidavits NV Energy submitted to the district court conflict as to the pipeline's proposed path. One affidavit refers to the easement area as encumbered by an electrical transmission line easement, while another refers to the pipeline's path as following both an overhead electrical transmission line corridor and an effluent water line. The maps and property descriptions that the verified complaint and affidavits authenticate, however, consistently show the pipeline traveling alongside the overhead transmission line easement, then along an effluent water line easement to the point of beginning. Again, the record contains nothing to establish a genuine issue of material fact as to the path of the easement NV Energy sued Mass Land in eminent domain to acquire.

Mass Land's final argument is that it was not afforded the time it needed to generate issues of fact as to whether the taking was "actually for a public use." While it is correct that the district court set the hearing close to the time NV Energy served Mass Land with its complaint, the district court then gave Mass Land additional time for briefing and supplemental briefing, during which time Mass Land retained an expert to review both this case and the PUC's UEPA materials and to submit an affidavit as to the latter. Despite this, Mass Land neither initiated discovery nor identified the facts on which it needed to take discovery. With

no stay in place, the pipeline has been built. Yet, at oral argument, Mass Land could not identify any potential issues of fact for a jury to determine beyond the UEPA and affidavit claims just discussed. Mass Land thus has not shown a basis for writ relief as to its jury demand.

CONCLUSION

For the reasons stated above, we deny Mass Land's petition for extraordinary writ relief.

_____, J.
Pickering

We concur:

_____, C.J.
Cadish

_____, J.
Stiglich

_____, J.
Herndon

_____, J.
Lee

_____, J.
Parraguirre

_____, J.
Bell